IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**NATHANIEL WALLACE, JR.**                                                          **PLAINTIFF**

**V.**                                                          **CAUSE NO. 3:11-CV-567-CWR-FKB**

**FORD MOTOR COMPANY**                                                          **DEFENDANT**

## ORDER

Before the Court is Ford Motor Company's motion for summary judgment on all of Nathaniel Wallace, Jr.'s claims. Wallace has responded in opposition and Ford has replied. The motion will be granted in part and denied in part.

### I.    Factual and Procedural History

On July 6, 2008, Mississippi State Trooper Nathaniel Wallace, Jr. was driving his state-issued 2008 Ford Crown Victoria in Clarke County, Mississippi, while on duty. The vehicle ran off the road and struck a tree, causing him to suffer injuries.

In July 2011, Wallace filed this suit in the Circuit Court of Hinds County, Mississippi, bringing a variety of negligence, warranty, contract, and product liability claims against Ford. Ford removed the case to this Court shortly thereafter.

The parties agree that a bolt in the vehicle's suspension system fractured, but differ on whether that fracture was a cause or a consequence of the crash. Wallace contends that the bolt was defectively manufactured and that its failure caused him to lose control of the vehicle. Ford argues that the accident was caused by Wallace's speed – approximately 60 mph in a 55 mph zone, it has asserted in another filing [Docket No. 124] – while traveling on wet pavement, and that the accident's impact caused the bolt to fracture, not the other way around.

### II.    Present Arguments

Ford contends that Wallace's manufacturing defect and inadequate warnings claims fail because the expert testimony supporting them is neither competent nor reliable, among other reasons. It next argues that the entire case should be dismissed because Wallace failed to preserve the subject vehicle. Finally, Ford claims that Wallace's remaining causes of action are subsumed by the Mississippi Products Liability Act (MPLA) or fail for a lack of evidence. *See* Miss. Code § 11-1-

63.

Wallace responds that expert testimony is not required in a products liability case, and even if it is, says Ford has not challenged his accident reconstruction experts. He contends that the Mississippi Highway Patrol (MHP) controlled the vehicle, disposed of the vehicle, and retained key components, adding that Ford's expert was the person that manipulated critical evidence. Wallace concludes by arguing that dismissal of his remaining claims is inappropriate at this juncture.

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 228 (5th Cir. 2007). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

### IV. Discussion

#### A. Expert Testimony Under the MPLA

The Court will begin with Wallace's arguments that expert testimony is not required in a product liability case in Mississippi, or alternatively that his accident reconstruction experts satisfy that requirement.

First, "[i]n general, claims of a manufacturing or design defect must be supported by expert testimony." *Thomas v. Kyocera Wireless Corp.*, No. 2:11-CV-9, 2012 WL 379481, at *3 (N.D. Miss. Feb. 3, 2012) (citations omitted). "Merely offering evidence that damage occurred after the use of a product is insufficient to establish liability." *Id.* (citation omitted). This Court has previously ruled that a plaintiff's failure to provide expert testimony in a MPLA case is cause for dismissal. *Cothren v. Baxter Healthcare Corp.*, 798 F. Supp. 2d 779, 782 (S.D. Miss. 2011).

Second, in a manufacturing defect case, expert testimony must support the plaintiff's burden

to prove that "[t]he product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications." Miss. Code § 11-1-63(a)(i)(1). The mere testimony of any expert does not satisfy the MPLA's requirement to provide *appropriate* expert testimony on the defect itself.

Thus, if Wallace's accident reconstruction experts are qualified to speak about manufacturing defects, then Wallace is correct that Ford's failure to seek exclusion of those experts counsels against granting summary judgment for lack of appropriate expert testimony. If Wallace's accident reconstruction experts cannot speak to manufacturing defects, however, Ford may have a viable argument if it can exclude Wallace's manufacturing defect experts.

Wallace has two accident reconstruction experts: Michael Cain and Tim Corbitt. Cain, who formerly worked for the MHP Crash Team, investigated the scene the morning of the accident. *See* Docket No. 131-10. He found a bolt missing from the lower control arm area of the right front wheel. *Id.* at 6-7. Cain also met with William Davis, who found a broken bolt north of the collision site and gave it to Cain. *Id.* at 7, 9. Because Wallace was traveling south, the presence of a bolt north of the accident suggests that the bolt fell from Wallace's vehicle before he crashed.

Cain concluded that "this [bolt] failure occurred prior to Trooper Wallace losing control of the vehicle. This opinion is based on visual examination of the bolt which showed heavy oxidation to portions of the interior of the bolt which became exposed when the bolt broke combined with the location of the bolt in relation to the collision site when it was found by Mr. Davis." *Id.* at 10. Cain's ultimate opinion was that the bolt's fracture "caus[ed] the vehicle to go out of control." *Id.* at 11.

This testimony is unproblematic when used for the purposes of accident reconstruction – at least, there has been no objection to date. The question now, though, is whether Cain's accident reconstruction testimony is sufficient to support the substantive elements of a defective manufacturing claim brought under the MPLA. If Wallace's other experts are excluded, is Cain's testimony enough to get the manufacturing defect claim beyond summary judgment?

The answer is no. Cain lacks the background or expertise to say whether the bolt's fracture and failure was caused by a manufacturing defect, as opposed to a design defect or even the negligence of a mechanic. *See* Docket No. 131-11, at 3, 5, 37, 46, 48 (Cain deposition). As a result, he cannot provide expert testimony that would assist the jury in determining whether "[t]he product

3

was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications." Miss. Code § 11-1-63(a)(i)(1).

To be clear, Cain is designated as an expert in the field of accident reconstruction. He may also be a fact witness with respect to certain things about the accident scene and the recovery of the broken bolt. But his testimony does not excuse Wallace from having an expert who can speak to the manufacturing defect itself.

The same is true of Wallace's second accident reconstruction expert, Tim Corbitt. Like Cain, Corbitt trained in law enforcement, not manufacturing. *See* Docket Nos. 131-12, at 15-16 (Corbitt CV); 131-13, at 7-8, 13 (Corbitt deposition). Corbitt's opinion that the accident was caused by a broken bolt does not by itself lend support to Wallace's claim that the bolt failed because it was defectively manufactured. Corbitt's testimony goes to other fact issues.

In sum, Wallace needs appropriate expert testimony to prove his manufacturing defect claim. These designated accident reconstruction experts are not themselves sufficient to prove all the essential elements of that claim under Mississippi law.

With that now clarified, Ford's argument that the manufacturing defect claim fails because Wallace's manufacturing defect experts are neither competent nor reliable will be taken up in ruling on Ford's separate *Motion to Exclude the Opinions of Robert Carbonara and Tim Carpenter and for Summary Judgment*, Docket No. 123.

### B. Inadequate Warnings Under the MPLA

In Mississippi, a plaintiff proves an inadequate warnings claim by showing that a product (1) "failed to contain adequate warnings or instructions," which (2) "rendered the product unreasonably dangerous to the user or consumer," and (3) was the proximate cause of the plaintiff's damages. Miss. Code § 11-1-63(a)(i)-(iii). As the Mississippi Supreme Court has put it, plaintiffs must "demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries." *3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005).

"[A] manufacturer is not liable for allegedly inadequate warnings in an owner's manual when the plaintiff has not read the manual." *Hankins v. Ford Motor Co.*, No. 3:08-CV-639, 2011 WL 6291947, at *5 (S.D. Miss. Dec. 15, 2011). That is because "[t]he presence or absence of anything

4

in an unread owner's manual simply cannot proximately cause a plaintiff's damages." *Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1084 (Miss. 2005) ("The plaintiffs in this case did not read the manual at all. Thus, they hardly can claim to have been harmed or misled by it.").

Wallace admitted in his deposition that he "never read the owner's manual." Docket No. 121-6, at 2. That means a warning in the owner's manual about the bolt could not possibly have given him additional information that he would have acted upon to avoid his injuries. *See Johnson*, 895 So. 2d at 166.

For that reason, summary judgment will be granted on Wallace's inadequate warnings claim. The Court need not consider Ford's remaining arguments on this claim.

### C. Preservation of the Subject Vehicle

The next issue concerns whether Wallace's case should be dismissed for his attorney's failure to preserve the subject vehicle. On June 25, 2013, the Court held a hearing to receive argument on this issue.

#### 1. Facts

After the July 2008 accident, MHP retained and stored the subject vehicle. In early 2010, after some amount of coordination with MHP staff, Wallace's investigators examined the vehicle. MHP sold the vehicle at auction in May of that year, and it was destroyed that September.

Wallace filed this suit in July 2011. Ford was first put on notice of Wallace's claim when it was served with process in August 2011. By then the vehicle had been destroyed.

#### 2. Arguments

Ford argues that it has been irreparably prejudiced because it was never able to inspect the vehicle and determine whether something other than the bolt caused Wallace's accident. For instance, on the day of the accident, Wallace told a MHP investigator that the vehicle had not handled the same after the tires were changed. Ford was unable to examine the tires to see whether a mechanic's negligence in changing them caused the crash. In addition, Ford says, the destruction of the subject vehicle means the critical evidence in this case (the bolt and nut) came directly from Wallace's long-time employer, who potentially could have been influenced to favor Wallace's case. Finally, Ford argues that Wallace cannot meet his burden to prove that the product must have been defective when it "left the control of the manufacturer or seller." Miss. Code § 11-1-63(a).

In Wallace's response brief, his attorney states that he *did* ask MHP to preserve the vehicle,

and claims he cannot be held responsible for what that agency ultimately did with its own property. He contends that any error was harmless because MHP preserved the bolt and other key components, which, years later, Ford was able to review before he had that opportunity. Wallace further argues that if any party is sanctioned it should be Ford, since one of Ford's experts allegedly violated the protective order by modifying the bolt and misplacing the nut attached to the bolt.

At the hearing, counsel for Wallace presented a number of other arguments. Counsel suggested that in 2009, he did not know the vehicle's importance to a product liability claim because he considered Wallace's case to be about workers' compensation only. Counsel only decided to take the case years later because Wallace kept returning to his office literally pleading with him to take the case, he said, and Wallace's injuries had become so significant that the potential damages justified pursuing a product liability action. Counsel also said he believed MHP would not sell a police vehicle to a private party. Counsel then argued that Ford was not prejudiced in developing its defenses because it was able to develop many defenses based on the retained evidence, essentially arguing that additional defenses would constitute overkill.

     **3. Law**

There is some disagreement about which law to apply to this issue. Part of Ford's brief emphasized Mississippi law on spoliation of evidence, while citing several federal court cases. Docket No. 122, at 8. Wallace originally did not dispute application of Mississippi law to this issue, *see* Docket No. 132, at 12, but in response to this Court's notice of hearing, filed a supplemental response brief citing both state and federal cases on spoliation of evidence, Docket No. 144.

In *Davis v. Ford Motor Company*, this Court looked to Mississippi case law holding that "when evidence is lost or destroyed by one party (the 'spoliator'), thus hindering the other party's ability to prove his case, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss." *Davis v. Ford Motor Co.*, 375 F. Supp. 2d 518, 520 (S.D. Miss. 2005) (brackets omitted) (quoting *Thomas v. Isle of Capri Casino*, 781 So. 2d 125, 126 (Miss. 2001)). "Because the presumption of unfavorability is not solely confined to the specific issue of what information was contained in the missing evidence, the fact finder is free to draw a general negative inference from the act of spoliation, regardless of what the spoliator's rebuttal evidence shows." *Thomas*, 781 So. 2d at 133. In Mississippi, the loss or destruction of evidence need not be

intentional; negligent losses can also constitute spoliation.[1] *Id.*

In *Davis*, a design defect case involving a Ford vehicle, the defendants sold the subject vehicle to a salvage yard approximately three months after the plaintiff's accident. The plaintiff was not entitled to a negative inference instruction, though, because the defendants had no indication that litigation involving that vehicle was likely. *Davis*, 375 F. Supp. 2d at 520. The Court found it unreasonable to make a rule "that automobile manufacturers should retain and preserve every vehicle involved in any automobile accident – or at least the serious ones – indefinitely so that the vehicle will be available for inspection and testing in case someone were to decide to sue the manufacturer at some time in the future." *Id.* The foreseeability of litigation was thus a critical issue in determining whether a party should be punished for failing to preserve evidence.

In contrast, Wallace's recent filing has argued (at least in part) that federal law on spoliation may apply, citing *Walker v. WTM, Inc.*, No. 2:09-CV-65, 2010 WL 3851997 (S.D. Miss. Sept. 27, 2010) ("Dexter is not entitled to an adverse inference instruction that the u-bolt was defective where the u-bolt was lost through no fault of the plaintiffs.") and *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191 (5th Cir. 2005), among other cases.

*Condrey* was a diversity proceeding which applied the law of Georgia. In resolving one of the parties' evidentiary disputes, the Fifth Circuit held that federal law on spoliation applied, not Georgia law. *Id.* at 203 (citing *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)). Because Fifth Circuit decisions are binding in these proceedings, the Court will apply federal law on spoliation of evidence instructions.

"The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Id.* "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (quoting McCormick on Evidence). When bad faith or bad conduct has been shown, a spoliation instruction allows but does not require the jury to draw an adverse inference against a party. *BCE Emergis Corp. v. Cmty. Health Solutions of Am., Inc.*, 148 F. App'x 204, 219 (5th Cir. 2005) (unpublished).

---

[1] In addition to an adverse instruction, in Mississippi, spoliation can also subject the offending party to discovery sanctions, criminal penalties, contempt sanctions, and disciplinary sanctions. *Dowdle Butane Gas Co. v. Moore*, 831 So. 2d 1124, 1127, 1133 (Miss. 2002).

7

District courts may permit the parties to put on evidence about the alleged spoliation and let the jury "punish [parties] accordingly." *Id.*; *see United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) ("A district court has discretion to admit evidence of spoliation and to instruct the jury on adverse inferences.").[2]

### 4. Analysis

Wallace has attempted to avoid sanctions by attaching the September 9, 2009, preservation letter his attorney sent to MHP.[3] In that letter, after introducing himself and his client, counsel wrote the following: "I AM REQUESTING THAT YOU DO NOT SELL OR DESTROY THE CAR OR ANY PART OF THE CAR THAT YOU HAVE IN YOUR POSSESSION UNTIL I AM ABLE TO VIEW THE CAR AND TAKE PHOTOGRAPH[S] OF THE DEFECT. Hopefully, we can complete this inspection within the next thirty days." Docket No. 131-1.

Counsel's argument that he asked MHP to retain the subject vehicle is therefore a half-truth. He asked the agency to retain the vehicle *only* long enough for him to examine it. The letter means counsel was aware of the value of the vehicle to his case; why else send an investigator? But he was unwilling to seek preservation of the vehicle for his anticipated opponent to defend itself.

That unwillingness has resulted in prejudice to Ford. It could not explore other defenses indicated by the rest of the vehicle, from the handling of the tires to whether the spindle housing the nut and fractured bolt exhibited signs of wear. *See Brancaccio*, 1992 WL 189937, at *2 ("Without an ability to examine the car, the defendants would be greatly frustrated in their ability to defend their case."). Even though Ford has developed a handful of defenses in this suit, it should have been

---

[2] Several cases from other circuits indicate that federal courts retain authority to dismiss cases for spoliation of evidence under the Rules of Civil Procedure governing discovery. An example of that in the product liability context is *Brancaccio v. Mitsubishi Motors Co.*, No. 90 Civ. 7852, 1992 WL 189937 (S.D.N.Y. July 27, 1992), where the court dismissed the plaintiff's design defect case pursuant to Federal Rule of Civil Procedure 37 after the plaintiff failed to retain the allegedly-defective part of the vehicle (the seatbelt) for the defendant's examination. *See also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001) (affirming dismissal of product liability action where plaintiff, "his attorneys, and his expert witnesses anticipated filing suit against General Motors and were fully aware that the vehicle was material evidence in that litigation. Yet, they failed to take any steps to ensure that [plaintiff] discharged his duty to prevent the spoliation of evidence."); *Jackson v. Nissan Motor Corp.*, 121 F.R.D. 311, 321 (M.D. Tenn. 1988) (dismissing product liability case under Rule 37 where plaintiff's counsel "failed to take simple, reasonable steps to secure the most important piece of evidence in the case," the subject vehicle), *rev'd on other grounds*, 888 F.2d 1391 (6th Cir. 1989) (affirming dismissal but reversing award of attorney's fees and costs).

[3] Ford claims to have never seen the letter before it was attached to Wallace's response brief.

permitted to develop every defense supported by the facts contained in the subject vehicle. So long as the evidence supports them, defendants are entitled to bring as many defenses as they develop, just as there is no limitation on the number of claims a plaintiff may bring. The plaintiff's cavalier argument to the contrary is rejected.

The preservation letter also reveals that litigation was foreseeable. There is no reason for an *attorney* to send a preservation letter and investigate a vehicle unless litigation is foreseeable. Counsel may not have known at that time that he would file suit; indeed, a reasonable investigation includes leaving open the possibility that no suit will be filed. After this investigation, however, Wallace still failed to ask MHP to preserve the vehicle.[4] Counsel's failure to ask MHP to preserve the vehicle for Ford's examination was a gross omission at best, and a violation of his professional duties at worst.

Further, counsel's most recent argument – that he thought the car unimportant to preserve because Wallace's case was only a workers' compensation issue – is belied by the text of his September 2009 letter. Counsel stated in the first paragraph that "I am investigating a claim against Ford and its seller for a defect in the steering on the wheel and front end of the car." Docket No. 131-1. That obviously references a product liability claim, which was indeed filed against Ford and the seller of the vehicle, Watson Quality Ford.[5] The letter has no mention whatsoever of a workers' compensation or any other type of claim.

The arguments for a spoliation inference do not all favor Ford, however. Although Wallace could have done more to preserve the vehicle, he ultimately did not have possession, control, or ownership over the vehicle. No evidence presently shows that Wallace or his attorneys sought to influence MHP to sell or destroy the vehicle, or any communications to or from MHP after MHP

---

[4] At the hearing, plaintiff's counsel asserted that he declined Wallace's case after his inspectors examined the vehicle, only to pick it up again several months after Wallace filed suit *pro se*, in consideration of Wallace's injuries apparently becoming more severe.

It is true that Wallace filed his suit *pro se*. Docket No. 1-2. It also is true, however, that the structure and text of Wallace's complaint is nearly identical to other complaints Wallace's counsel has filed in this Court. *See, e.g.*, Docket No. 1 *in Runnels v. Ameristep Corp.*, No. 3:11-CV-106 (S.D. Miss. Feb. 23, 2011). In other words, counsel appears to have written Wallace's complaint for him.

Counsel's assistance in that endeavor, though falling short of representation, suggests a more active role in this litigation as well as an earlier role in this suit than he suggested to the Court at the hearing.

[5] Watson Quality Ford was later voluntarily dismissed from this action.

received counsel's letter to the time it was inspected.[6] Additionally, there is no evidence regarding any communications between counsel and MHP after the inspection and before the time the vehicle was sold and destroyed.

The Fifth Circuit has written that in spoliation situations, "[m]ere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *Vick*, 514 F.2d at 737. Applying that language here, counsel's actions may rise above mere negligence and permit a jury to find bad faith or bad conduct. He sent his agents to examine the vehicle and therefore knew in early 2010 whether he had a weak case. But he then sat on the matter for years without a more definite preservation letter, an offer to purchase or store the vehicle, or any notice to his opponent of the vehicle's existence. And he knew that Ford and the seller would be the defendants to any product liability action filed since, as he explained at the hearing, he has filed many of these cases before.

As a result, the parties will be entitled to present **limited** evidence and argument to assist the jury in determining whether the subject vehicle was lost through bad conduct. The parties also shall include a proposed jury instruction on this issue in their pretrial submissions to the Court. Counsel for both sides are cautioned that this issue will not be permitted to overwhelm the merits of the trial. All know what is appropriate in this regard.[7]

As a last point in this section, the undersigned does not agree that destruction of the subject vehicle necessarily means Wallace cannot prove that the vehicle was defective when it left Ford's hands. That is a question of fact which Wallace bears the burden to prove at trial. There is enough

---

[6] Although counsel anticipated that the inspection would occur within 30 days, it did not take place until several months later.

[7] Left unresolved is Wallace's argument that Ford also erred, in that its expert violated the protective order by removing the nut from the bolt and subsequently misplacing the nut. The protective order prevented and continues to prevent the parties and their agents from materially affecting the bolt and nut. Wallace points to this alleged violation suggesting that it creates a genuine issue of material fact which counsels against a grant of summary judgment. He, however, has not filed a separate motion asserting a violation of the protective order. *See* Docket No. 93.
    Notwithstanding that omission, at this juncture, it is not clear that Ford's expert violated the protective order. First, Ford's expert's removal of the nut may not have been material; the briefing is not very helpful on this point. And second, the record evidence and briefing suggest that if Ford's expert's removal of the nut violated the protective order, than Wallace may be subject to the same sanctions since his expert apparently *also* removed the nut from the bolt. The evidence at trial will show whether either, one, or both parties' experts violated the protective order.

at the summary judgment stage to proceed.

### D. Remaining Claims

Wallace's brief argues at various points that Ford breached an express warranty, breached the implied warranties of merchantability and fitness for a particular purpose, breached a contract, and somewhat incongruously, designed the vehicle in a defective manner. *See* Docket No. 132, at 8, 10, 13-15. His support for these claims is general to the point of vagueness and lacks citation to record evidence. *E.g.*, *id.* at 14 ("The testimony regarding implied warranty of merchantability and implied warranty of fitness for a particular purpose are supported by Plaintiff's fact witness testimony, accident reconstruction testimony and expert testimony. The documents and testimony submitted support this claim.").

A review of Wallace's arguments and the record reveals that his claims merge into one issue: whether the subject vehicle was defectively manufactured.

For example, Wallace has not pointed to a contract or an express warranty which would support breach of contract or express warranty claims. He has no implied warranty of fitness for a particular purpose against Ford. *See Moss v. Batesville Casket Co.*, 935 So. 2d 393, 399-400 (Miss. 2006); *Farris v. Coleman Co.*, 121 F. Supp. 2d 1014, 1018 (N.D. Miss. 2000). His brief recites the general negligence standard, *see* Docket No. 132, at 14, but this Court has previously found negligence claims subsumed into the MPLA when there is "nothing distinct" about the claims "requiring separate causes of action or unique jury instructions." *See Hankins v. Ford Motor Co.*, No. 3:08-CV-639, 2011 WL 6180410, at *6 (S.D. Miss. Dec. 13, 2011). Ford specifically argued that case in its opening brief, but Wallace's response did not explain why *Hankins* was incorrect or should not be applied here. *See* Docket No. 122, at 12.

In sum, the briefing does not show any question suitable for resolution by a jury except whether the vehicle was defectively manufactured in violation of the MPLA. Ford is therefore granted summary judgment on every other cause of action.

### V. Conclusion

The motion for summary judgment is granted in part and denied in part.

**SO ORDERED**, this the 28th day of June, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
