**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**NATHANIEL WALLACE, JR.**                                              **PLAINTIFF**

**V.**                         **CAUSE NO. 3:11-CV-567-CWR-FKB**

**FORD MOTOR COMPANY**                                          **DEFENDANT**

**ORDER**

Before the Court is Ford Motor Company's motion to exclude the expert opinions of Robert Carbonara and Tim Carpenter, and if excluded, motion for summary judgment on the manufacturing defect claim those experts support. Plaintiff Nathaniel Wallace, Jr. has responded in opposition and Ford has replied. The motion will be granted in part and denied in part.

**I.     Factual and Procedural History**

On July 6, 2008, Mississippi State Trooper Nathaniel Wallace, Jr. was driving his state-issued 2008 Ford Crown Victoria in Clarke County, Mississippi, while on duty. The vehicle ran off the road and struck a tree, causing him to suffer injuries.

In July 2011, Wallace filed this suit in the Circuit Court of Hinds County, Mississippi, bringing a variety of negligence, warranty, contract, and product liability claims against Ford. Ford removed the case to this Court shortly thereafter.

The parties agree that a bolt in the vehicle's suspension system fractured, but differ on whether that fracture was a cause or a consequence of the crash. Wallace contends that the bolt was defectively manufactured and that its failure caused him to lose control of the vehicle. Ford argues that the accident was caused by Wallace's speed – approximately 60 mph in a 55 mph zone, it asserts – while traveling on wet pavement, and that the accident's impact caused the bolt to fracture, not the other way around.

**II.    The Experts**

      **A.     Robert Carbonara**

Carbonara is a Ph.D. with training and experience in materials science and failure analysis, among other related fields. Docket No. 129-1. According to a microscopic analysis he conducted, the bolt in the subject vehicle "failed as the result of fatigue." Docket No. 123-1, at 1. Carbonara claims that had the nut been properly installed with a plastic retention insert, the forces on the bolt

would have been reduced and would not have led to that fatigue. He opines that "the lack of the retention insert in the ball-joint nut is a manufacturing defect" which caused the bolt failure and Wallace's accident. *Id.*

Ford argues that Carbonara "should be excluded because no facts, scientific data, or testing support his opinion that the failure of the ball joint stud caused the loss of control in the subject crash." Docket No. 124, at 3. Citing Carbonara's deposition testimony, Ford claims he "has no basis for opining that the vehicle cannot be steered if the ball joint stud fails." *Id.* at 4. The fact that Ford recalled certain Crown Victorias in 1998 does not help him, it asserts, because the ball joint assembly changed in the intervening decade. *Id.* at 7-8.

### B.     Tim Carpenter

Carpenter is the Parts and Service Director for Gray-Daniels Toyota and has approximately 30 years of experience in the field of automotive mechanics. Docket No. 123-7. According to his expert report, the bolt failure led to separation of the vehicle's lower control arm, which in turn made the vehicle unsteerable. Docket No. 123-8. Carpenter opines that rust spots inside the bolt indicate that a defect in the bolt casting process at the factory led to the bolt's eventual failure. *Id.*

Ford contends that Carpenter "should be excluded because he is not qualified to offer any of the opinions offered in his report and deposition." Docket No. 124, at 2. Although he has experience in automotive mechanics, Ford says his "ultimate opinion" is metallurgical in nature, which is outside the scope of Carpenter's expertise. *Id.* at 9.

## III.    Legal Standards

### A.     Expert Testimony

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the post-*Daubert* amendments to Federal Rule of Evidence 702. *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). That Rule now states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The purpose of the Rule is to guide the district court's gatekeeping function and ensure that the jury hears reliable and relevant expert testimony. *See Guy*, 394 F.3d at 325. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quotation marks, citations, and brackets omitted); *see United States v. Fields*, 483 F.3d 313, 342 (5th Cir. 2007). The party offering the expert bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert*, the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including whether the proposed technique or theory can be or has been tested, whether it has been subjected to peer review and publication, whether its error rate is acceptable, whether the theory is generally accepted in the scientific community, and whether there are standards controlling the technique. *See Guy*, 394 F.3d at 325; *Knight*, 482 F.3d at 351. It later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325 (citation omitted); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

The *Daubert* analysis applies to the process of the expert's conclusions, not the merits of the conclusions themselves. *Guy*, 394 F.3d at 325. The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation marks and citation omitted).

The Fifth Circuit has quoted with approval the Seventh Circuit's observation that "[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a

genuine scientist." *Moore*, 151 F.3d at 278 (quotation marks and citation omitted). The extrapolation or "leap[] from an accepted scientific premise to an unsupported one . . . must be reasonable and scientifically valid." *Id.* at 279 (citations omitted).

### B.  Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

## IV.  Discussion

### A.  Carbonara

Ford's argument against Carbonara is based on his lack of testing or mathematical calculations on the steerability of the subject vehicle. As a general matter, though, a lack of testing is not by itself sufficient grounds for exclusion. *See Hankins v. Ford Motor Co.*, No. 3:08-CV-639, 2011 WL 6046304, at *4 (S.D. Miss. Dec. 5, 2011). Nor is it is persuasive to say that Carbonara should be excluded because Ford's experts have arrived at opposite conclusions. Those arguments run contrary to a legal standard which asks whether scientific conclusions are *testable* – as only one relevant question in a multi-factor test, it should be noted – and leaves a conflict of qualified expert opinions for resolution by the jury. *See* Part III.A, *supra*.

Ford also has pointed to a case where a district court excluded a manufacturing defect expert who did not run calculations or test an exemplar vehicle to evaluate his hypothesis about the strength of a vehicle component. *Schipp v. Gen. Motors Corp.*, 443 F. Supp. 2d 1023, 1031 (E.D. Ark. 2006). Here, Carbonara examined the bolt under a microscope to develop an opinion on how it failed, which is one kind of scientific analysis, albeit not one on the question of causation.

The Court views the issue with this expert as less about testing and more about Carbonara's qualifications to discuss whether the bolt failure could have caused the accident.[1] Here is one of the

---

[1] If Carbonara is not qualified to speak to causation, any tests and calculations he performed on the steerability of the subject vehicle would not assist the jury.

relevant exchanges between Ford's attorney and Carbonara:

> Q: [Y]ou've given an opinion in this case that you believe the vehicle was not controllable -- or would not be controllable if this bolt was broken?
> A: Right.
> Q: Okay. How do you know that if you haven't done any testing?
> A: Well, because you look at what the component is, and it's part of the steering mechanism, and if you lose a portion of the steering mechanism, then you've lost some control. In addition, if -- as I said earlier, if you look at the NHTSA report, even though it wasn't dealing with this nut that didn't have the retention washer in it, it tells you that if you lose the ball joint, you lose control of the vehicle.

Docket No. 129-4, at 18.

This and subsequent pages of the deposition indicate that Carbonara's opinion on causation is based on the fact that Wallace was an experienced driver who normally would not have lost control of his vehicle and a report from the National Highway Traffic Safety Administration (NHTSA). *See id.* at 19 ("Mr. Wallace is an experienced highway patrolman that has driven a lot of miles; and I would think that if anyone could control a vehicle, someone like him could. . . . I cited the NHTSA report which says that if you lose the ball joint, you're going to -- you're going to lose control of the vehicle"), 45.

Wallace's experience as a driver, though, does not help a jury understand the *mechanics* of how the bolt failure could hinder the vehicle's steering. In addition, the NHTSA report concerned a model year 10 years earlier than the subject vehicle, which suggests that its relevance is questionable, and the recall it concerns is not conclusive on causation, stating only that if the ball joint cracks and fails, "*reduced* steering control *could* occur, increasing the risk of a crash." Docket No. 129-11, at 2 (emphasis added).

Continuing on in the deposition, however, casts further doubt on Carbonara's causation testimony. When Ford started to ask detailed questions about how the bolt failure would cause the lower control arm to separate, Carbonara's answers became more vague (*e.g.*, "pretty much"), and he ultimately had to refer Ford to a mechanical engineer. *Id.* at 39. "I don't know. I'm not a mechanical engineer. You're going to have to ask that question to a mechanical engineer." *Id.* at 39-40. His answers support that he was not qualified to speak on that issue.

Ford has sought exclusion of Carbonara's testimony in full. That request will be denied.

Carbonara may provide expert testimony on how and why the bolt was defectively manufactured and failed. At a minimum, his testimony goes to that part of the Mississippi Products Liability Act (MPLA) requiring the plaintiff to prove that "[t]he product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications." Miss. Code § 11-1-63(a)(i)(1).

Carbonara, however, admittedly does not have the training or expertise to testify that the failure of the bolt would have rendered the vehicle unsteerable, causing the accident. Because that is beyond the scope of his "knowledge, skill, experience, training, or education," such an opinion may not be elicited by Wallace's counsel at trial. Fed. R. Evid. 702.

### B.   Carpenter

Ford also seeks complete exclusion of Carpenter. That too will be denied. Carpenter has substantial training and experience in his designated field of automotive mechanics. *See* Docket Nos. 129-5; 129-7, at 6. The present case involves a bolt in the ball joint assembly, and Carpenter says he has worked on over 500 ball joints during his career. Docket No. 129-7, at 27. He need not have tested an exemplar vehicle to speak about how ball joints typically look, how they work, and what happens in vehicles when the ball joint assembly fails, all of which would assist the jury in understanding the parts at the center of this case. *See id.* at 14-15, 27.

That said, Ford is correct that Carpenter does not have the training, experience, or other qualifications necessary to speak on the nature of the manufacturing defect in this case. He admits he is "not a metallurgist." *Id.* at 7, 19. His deposition testimony that an unknown contaminant at the factory caused the subject bolt to look like it does and fail, *see id.* at 18-20, is not sufficiently reliable to help the jury determine whether there was a manufacturing defect.

Excluding that testimony means Carpenter may still testify about other things within the scope of his designation and report. Just as an example, he may be able to state that in his years of experience, a bolt in the ball joint assembly typically does not fracture and fail after being driven for 16,000 miles, which is approximately how far the subject vehicle had been driven. He also may be able to say that in his experience, a broken ball joint assembly renders a vehicle unsteerable.

In fact, Carpenter agreed in his deposition that as soon as the bolt fractured with Wallace driving at 58 mph, Wallace would not have been able to control the vehicle. *Id.* at 15-16. That testimony would assist the jury in understanding whether "[t]he defective and unreasonably

dangerous condition of the product proximately caused the damages for which recovery is sought." Miss. Code § 11-1-63(a)(iii).

For these reasons, counsel for Wallace may not elicit from Carpenter a metallurgical opinion that the defect in this case is attributable to an unspecified error in the casting process.

### C.     Summary Judgment

Ford has argued that summary judgment is due on the manufacturing defect claim if Carbonara and Carpenter are excluded. Docket No. 124, at 14. Since neither expert will be excluded in full, the argument is unavailing at this juncture.

Specifically, the gap in Carbonara's expertise is whether the manufacturing defect caused the accident. Carpenter fills that void. Similarly, while Carpenter cannot provide an opinion about the nature of the manufacturing defect, Carbonara can and has. While parts of their testimony are subject to exclusion under *Daubert* and Rule 702, their cumulative presentation is enough to conclude – for purposes of summary judgment – that Wallace has met his burden to present appropriate expert testimony on his manufacturing defect claim.[2]

## V.     Conclusion

The motion to exclude is granted in part and denied in part. Portions of Carbonara and Carpenter's testimony will be excluded as described above.

**SO ORDERED**, this the 28th day of June, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[2] Assuredly, Ford will be prepared to subject these experts to "vigorous cross-examination" and to present contrary evidence. *Gibson v. Invacare Corp.*, No. 4:09-CV-182, 2011 WL 2262933, at *5 n.3 (S.D. Miss. June 7, 2011). As Judge Starrett explained in a recent product liability case against Ford, "Ford believes the evidence is weak, and Ford's expert testimony may even be stronger. However, those are issues for a jury to consider." *Riley v. Ford Motor Co.*, No. 2:09-CV-148, 2011 WL 2728266, at *8 (S.D. Miss. July 12, 2011).